**CALIFORNIA UNION INSURANCE COMPANY, Movant,**

v.

**Tommy SPADE and Carol Spade d/b/a Spade Trucking Company, and Ryan Insurance, Inc., Respondents,**

**and**

**Tommy SPADE and Carol Spade d/b/a Spade Trucking Company, Movants,**

v.

**CALIFORNIA UNION INSURANCE CO. and Ryan Insurance, Inc., Respondents.**

Supreme Court of Kentucky.

Dec. 14, 1982.

William A. Watson, P.S.C., Middlesboro, for California Union Ins. Co.

William A. Hayes, Middlesboro, R. Jackson Rose, Tazewell, Tenn., for Tommy Spade and Carol Spade d/b/a Spade Trucking Co.

Ronald L. Coombs, Louisville, for Ryan Ins., Inc.

STERNBERG, Justice.

Tommy Spade and Carol Spade, d/b/a Spade Trucking Company, are the owners of a coal auger machine, and the California Union Insurance Company carried its insurance coverage. On September 21, 1978, the machine, while in operation, was damaged by the collapse of a "high wall." The owners made demand on the insurance carrier for payment of damages. Liability was denied, and the owners of the auger filed suit to recover the damages which were sustained by the auger due to the collapse of the "high wall." The company contends that the policy of insurance carried on this piece of equipment does not provide liability for damages of this nature. The trial judge found as a matter of law that the policy did cover damages of this nature and put the parties to proof on the extent of damages only. The jury awarded damages in favor of the Spades in the sum of $67,000, and,

thereupon, the judge entered judgment accordingly. On appeal to the Court of Appeals, that court affirmed so much of the judgment of the circuit court as found that the policy of insurance did provide coverage for damages sustained to the auger from the collapse of the "high wall."

By reason of the manner in which this case is being disposed of by this court, it is not necessary to consider any issue other than the extent of the coverage provided by the subject insurance policy.

The phrase "high wall" has a definite and fixed meaning when used in connection with recovering coal from the earth by the use of an auger. To recover coal by the auger method, it is necessary to grade away the earth surface until the coal vein is exposed. That portion of the earth remaining after grading is a "high wall" above the vein into which the auger is driven. Thus, "high wall" is common to auger drilling and is recognized as a potentially hazardous condition. The dangerous condition is recognized by all of the parties, and insurance coverage for an auger in this type of operation is not, as a general rule, sought after by insurance carriers. We recognize that the policy is to be construed by what it says, not by what the parties meant for it to say. This court will not make contracts for the parties, nor rewrite the contract for the parties. *United States Fidelity & Guaranty Co. v. Lairson,* Ky., 271 S.W.2d 897 (1954). We need only to look to the wording of the policy and the endorsements attached to it to ascertain the extent of liability which was actually provided.

The effective date of the coverage was November 8, 1974, which, of course, was prior to September 21, 1978, the date of the damage to the auger. The policy is identified as "Contractors Equipment Form—All Risks." On the face of the policy it is stated: "This Policy Insures Against Fire, Theft, CAC." There was no fire involved in the loss; there was no theft involved in the loss; consequently, the fire and theft coverages are of no application. Any loss to be covered by the Combined Additional Coverage (CAC) provision must come within the definition of that type of coverage. A general purpose endorsement to the policy provides as follows:

"GENERAL PURPOSE ENDORSEMENT
CAC–Combined Additional Coverage
To pay for direct and accidental loss of or damage to the equipment, hereinafter called loss, caused by windstorm, hail, earthquake, explosion, riot or civil commotion, or the forced landing or falling of any aircraft or of its parts or equipment, flood or rising waters, malicious mischief or vandalism, external discharge or leakage of water except loss resulting from rain, snow or sleet whether or not wind-driven."

There was no loss of or damage to the equipment caused by windstorm, or hail, or earthquake, or explosion, or riot, or civil commotion, or by the forced landing or falling of any aircraft or any of its parts or equipment, or by flood or rising waters, or by malicious mischief or vandalism, or by external discharge or leakage of water.

On the face of the policy it is written "This Policy Does Not Insure Against . . . ." Thereafter, there are 13 numbered paragraphs delineating the named noncoverage provisions of the policy. We have for our consideration the defined types of coverage, as contrasted with the defined types of noncoverage. There are no limits to the character of conflicts that the mind of man can bring forth when attempting to woo the cloak of coverage for losses or damages not insured against. We deem this a negative approach to the issue. The positive approach sets out in clear and concise words the nature and character of the losses or damages that the policy insures against. In other words, the owners of the auger contend that the subject policy covers the auger from damages from any and all sources not specifically excluded by the terms of the policy and that since the collapse of the "high wall" is not excluded, it is therefore included. In *United States Fidelity & Guaranty Co. v. Lairson,* supra, we said:

"Appellee is correct that insurance policies are construed strictly against the in-

**584**

surer and liberally in favor of the insured so as not to defeat the intended purpose of the policy. *Life & Casualty Ins. Co. of Tenn. v. Metcalf*, 240 Ky. 628, 42 S.W.2d 909. But this does not mean that courts in giving a liberal construction to a policy can ascribe to it a meaning not coming within the limits of the language of the contract of insurance. Nor can courts read into it conditions and terms not incorporated therein."

We are constrained to the view that there are no conflicts between the coverage and noncoverage provisions of the policy, and since the character of the loss does not fall within the provisions of the Combined Additional Coverage (CAC), there is no coverage.

Since we have determined that there was no insurance coverage, all other issues become moot.

The decision of the Court of Appeals and the judgment of the Bell Circuit Court are reversed, and this case is remanded to the Bell Circuit Court for the entry of a judgment consistent herewith.

All concur.